Warner Lewis of Gloucester county, by his deed dated the 5th of January 1798, conveyed all his estate, real and personal, (except a parcel of land specified in the deed,) which had descended to him from his father, to John Lewis and Wilson Gary Nicholas, in trust for the payment of his debts, then for the support of his family, and then for his children. In November of the same year, Warner Lewis died, and by his will, after providing for his wife, he gave the residue of his estate to his two daughters; and if they died without issue, to his brother John Lewis; who he appointed one of his executors.
It seems that John Lewis was the principal, if not the sole, acting trustee and executor under the deed and will of Warner Lewis. In May 1802, William Wiseham administrator, and Mary Charlton administratrix, of Francis Charlton deceased, recovered a judgment against John Lewis, as the executor of Warner Lewis deceased, for £ 123. 14. 5½., with interest at the rate of 5 per cent. per annum on £ 122. 9. 11½., a part thereof, from the 3d of September 1796, to be paid when assets sufficient should come to his hands, and their costs, 6 dollars 14 cents. William Wiseham *Page 426 
died not later than 1805, and Mary Charlton died in 1810 or 1811; and there was no qualification on the estate of Francis Charlton until February 1831, when Robert Anderson qualified thereon as administrator de bonis non.
John Lewis died in 1827, when Thomas Smith qualified as his executor.
It seems that after the death of John Lewis the two daughters of Warner Lewis instituted a suit against his executor Thomas Smith, for a settlement of his trustee and executorial accounts; and the case was so proceeded in that a sum exceeding 4000 dollars, principal and interest in 1827, was ascertained to have been in the hands of John Lewis, as trustee and executor, as early as 1815.
In 1840 Robert Anderson instituted this suit against Thomas Smith as executor of John Lewis, for the purpose of subjecting the estate of Warner Lewis deceased, in his hands, to the satisfaction of the judgment recovered by Francis Charlton's former representatives against John Lewis, as the executor of Warner Lewis in 1802. In his bill he set out the foregoing facts, and asked for a decree against the executor of John Lewis for the amount of the judgment.
Smith answered the bill, and relied upon the statute of limitations, and the great lapse of time which had occurred since the judgment, in bar of the claim. And he dying, the cause was revived in the name of William P. Smith his administrator; and came on to be heard in October 1844, when the Court decreed in favour of the plaintiff for the amount of the original judgment, 412 dollars 41 cents, with interest at the rate of 5 per cent.
on 408 dollars 32 cents, from the 3d of September 1796 till paid, and 6 dollars 64 cents the costs of the judgment, and also the costs of this suit. Whereupon William P. Smith applied to this Court for an appeal, which was allowed. *Page 427 
The judgment upon which the decree sought to be reversed is founded, was rendered in the year 1802. No steps appear to have been taken to enforce the judgment until the institution of this suit in the year 1840.
Thomas Smith the intestate of the appellant William P. Smith, in his answer to the bill, set up two defences, to wit, the statute of limitations, and the presumption of satisfaction arising from the great delay in proceeding upon the judgment. It is insisted in the petition and in the arguments of counsel here, that both of said defences were good, and that the Chancellor erred in overruling them.
The judgment was obtained by William Wiseham administrator and Mary Charlton administratrix of Francis Charlton deceased, against John Lewis, executor of Warner Lewis deceased, to be levied of the goods and chattels of the said Warner Lewis deceased, when assets sufficient should come to the hands of the defendant to be administered.
It is stated in the bill, and proved by a deposition in the cause, that Wiseham the administrator died in 1804 *Page 445 
or 1805, and that Mary Charlton the administratrix died in 1810 or 1811; and Anderson the appellee qualified as administrator de bonis non of the said Francis Charlton in February 1831. Though thirty-eight years, therefore elapsed between the date of the judgment and the commencement of proceedings to enforce it, it appears that for at least twenty years of that period the estate of Charlton was without a representative. There cannot, of course, arise any presumption of satisfaction during this interval, and excluding it, there remains but seventeen or eighteen years upon the lapse of which to rest that defence.
No circumstances in aid of the lapse of time are averred in the answer or disclosed in the proofs. If this, therefore, had been a judgment de bonis testatoris, to be levied presently of the goods c. in the hands of the representative, instead of a judgment when assets, I should hardly suppose that the demand to have it satisfied could have been successfully resisted on the score of lapse of time: And when the character of the judgment is adverted to, and the further fact is brought into the statement of the case, to wit, that no assets came into the hands of the representative of Lewis till after the death of both the administrator and administratrix of Charlton, to wit, in 1815, it seems to me that all grounds for a defence, resting upon lapse of time or staleness of demand, is entirely removed.
It remains to be considered whether the statute of limitations presents any bar.
It must be conceded that the words of the 5th section of the statute of limitations, 1 Rev. Code, p. 489, are sufficiently broad to cover the case of a judgment when assets; and two of the members of this Court, (the President and Judge Baldwin,) expressed the opinion, in the case of Braxton v. Wood'sadm'r, 4 Gratt. 25, that such judgments fell within the scope and design of the statute. *Page 446 
I did not regard the question as fairly arising in that case for adjudication, inasmuch as the judgment to which the bar of the statute was there sought to be applied, was not, in my opinion, a judgment quando acciderent,
but a judgment de bonis testatoris, capable of being at once enforced by execution, without the previous issuing of a scire facias. With such views of the nature of the judgment, I did not deem it necessary to express any opinion as to whether judgments when assets
came within the meaning of the statute. I did, however, on that occasion, endeavour to investigate the subject, but was unable to find any authority directly bearing on the question, except the opinion of Judge Lomax, expressed in his work on the law of executors and administrators. At page 465, vol. 2, he says, that he regards them as embraced within the provisions of the statute; but he does not vouch any decision, nor does he go into any reasoning in support of the opinion.
A re-examination of the question, with a view to the decision of this case, has been attended by a like result; and I therefore regard the question as an open one.
The words of the statute embrace all judgments, without exception or proviso, "where execution hath not issued," and limit the suing out of a scire facias, or the bringing of an action of debt thereon, to the ten years next after the date of the judgments. The 6th section of the statute provides for disabilities appertaining to thepersons entitled to the judgments, and existing at the date of the judgments; and gives the further period of five years after the removal of such disabilities, for suing out the scire facias, or bringing the action; but no provision is made for the case of disabilities belonging to the judgments themselves. Such disqualifications or disabilities may however be attached to or so connected with the judgments as to render *Page 447 
it legally impossible (for a period) to enforce them by execution, or to revive them by scire facias, or to bring an action upon them. To judgments so situated, it will hardly be presumed the Legislature intended any limitation to apply, during the period of their incapacity.
By the common law, the failure of the plaintiff to sue out execution within the year, so far created the presumption of a payment, satisfaction or release of the judgment, as to compel the plaintiff to bring his action on the judgment; and thus give the defendant an opportunity, by pleading, to put in issue such supposed payment, satisfaction or release. By the statute Westminster 2, 13 Edward 1, c. 45, a scire facias
is given to the plaintiff to revive his judgment where he has omitted to sue out execution within the year; and it is now the remedy most usually resorted to for such purpose.
Notwithstanding the year's neglect drives the plaintiff, generally, to his action or scire facias, the English cases furnish many exceptions to the rule. As when a writ of error is brought on a judgment, the delay in executing the judgment being imputable to the defendant, execution may issue after the judgment is affirmed, although more than a year and a day have elapsed since the judgment was signed. 1 Salk. 322. So if a plaintiff has a judgment with a "cessat executio" for a given time, he may within a year and a day after the expiration of the time allowed by the "cessat executio," take out execution without a scire facias. 1 Salk. 322. So when the plaintiff is prevented from suing out his execution within the year by the defendant's obtaining an injunction out of chancery, he may upon the dissolution of the injunction, have execution without resorting to thescire facias. This was for a time disputed, but is now well settled law. 2 Burr. R. 660. And even where a year after judgment had *Page 448 
expired before the writ of error was sued out, and the judgment is affirmed, or plaintiff in error is nonsuited, or the writ of error discontinued, the plaintiff may sue out execution, the writ of error being held to have revived the judgment. 1 Show. 402.
In most of the States of this Union the same rule prevails either by force of the common law or by virtue of legislative enactment; and the same or like exceptions will be found to obtain. Thus in Nicholson v. Howsley,
5 Litt. Sel. Cas. 218, the agreement of the parties to suspend the execution prevented the operation of the one year rule; and in 8 Serg. Rawle 377, and 3 Binn. R. 160, it was decided that the plaintiff would be excused by such agreement, whether entered on the record or not. And in the case of the United States v.Harford Ely, 19 John. R. 173, it was decided that when the execution is delayed at the request
and for the benefit of the defendant, the rule requiring ascire facias does not apply. So in Long v.Morton, 2 A. K. Marsh. R. 39, where there was a decree against a widow for a tract of land with a reservation of her right of dower, and a period fixed within which she might have it assigned, and providing that if she should by the day fixed have her dower assigned, she might satisfy the decree by surrendering up so much of the tract as might not be allotted to her, it was held that the "haberefacias" might well issue within twelve months after the day fixed for the allotment.
The language of the first section of our execution law, 1 Rev. Code, p. 524, ch. 134, is "that all persons who have or shall hereafter recover any debt, c., by the judgment of any Court of record within this Commonwealth, may at their election prosecute writs of fieri facias,c., within the year, for taking the goods, c., c." *Page 449 
The language of the statute is explicit in confining the peremptory right to sue out execution "within the year." Yet I presume it has not been doubted since the decisions in Eppes v. Randolph, 2 Call 186, andNoland v. Cromwell, 6 Munf. 185, that this one year's limitation could not avail a defendant where there had been a stay of execution by his own agreement, or by force of an injunction obtained at his instance.
In any of the instances above cited of stay of execution, whether by "cessat executio" or the parol agreement of the parties, or by injunction orsupersedeas, I presume it will not be doubted that the plaintiff might at the end and expiration of the time bring his action of debt upon the judgment, instead of suing execution thereon; and that if the judgment had been thus suspended for more than ten years, he might meet the statute of limitations by shewing that though his judgment was more than ten years old, and one upon which no execution had issued, and thus falling within the very words of the statute, yet that it was so situated that no execution could be sued out on it, and therefore that it did not fall within the true meaning and design of the statute.
When a plaintiff in an action against an executor or administrator takes judgment of assets quandoacciderint, it is well settled that he cannot at any future time proceed to execution on the judgment, without first suing out a scire facias to state that assets have come to hand, and to warn the defendant, should he be able to allege any thing against such execution. Tidd's Practice 1063.
If after the lapse of ten years from the date of his judgment, upon which no execution hath issued, the plaintiff in his action thereon may successfully meet the plea of the statute by shewing that by the agreement of parties, or by force of an injunction obtained *Page 450 
by the defendant, he could not in the meantime sue out execution, it is difficult to conceive of any good reason why he may not obviate the force of the plea when tendered to an action of debt on a judgment "quando," by a demurrer or replication objecting that by the very form and nature of the judgment itself he had been prevented from issuing the execution.
In construing the statute its aim and purpose must be looked to, and its language ought to have a fair and reasonable interpretation. The limitations imposed on the right of the plaintiff to maintain an action on his judgment, have reference to and grow out of his conduct in respect to the execution, and necessarily presuppose that the plaintiff had at some time the right to sue out execution which he has failed to exercise. That this is so, is, I think, made still more apparent by looking to the second clause of the section of the statute, now under consideration, which provides that "where executionhath issued and no return is made thereon, the party in whose favour the same was issued, shall and may obtain other executions, or move against any sheriff or other officer or their security or securities for not returning the same, for the term of ten years from the date of such judgment, and not after." This Court held in the case of Herrington v. Harkins' adm'rs,
1 Rob. R. 591, that whilst the right to sue out other executions on a judgment where an execution had been before issued but not returned, was, by this clause, expressly limited to ten years, an action of debt was not embraced in the words or meaning of the clause; and that in all cases where the plaintiff had sued out execution there was no limitation to the period within which an action of debt might be brought on the judgment.
Whilst the second clause of the fifth section prescribes a limitation to the remedies of plaintiffs in the cases where they have so far availed themselves of the *Page 451 
means of enforcing judgment as to sue out execution, but have obtained no return thereon, the first clause of the section was, in my opinion, designed to prescribe the limitation to their remedies, where having a right to sue out executions, they have wholly failed to exercise the right. By the term "judgments" in the first clause, are intended judgments clothed as judgments ordinarily are, with the capacity of being enforced; judgments upon which the plaintiffs have the right to sue out execution. Where the exercise of this right is stayed or suspended by the agreement of the parties, or by the restraints of legal proceedings set on foot at the instance of the defendant, the limitation will not begin to run in favour of the defendant till the time of such stay or suspension has expired. Judgments which shew upon their faces that there is now no right to enforce them by execution, and that such right is to depend on other proceedings yet to be instituted, do not, in my opinion, come within the meaning and operation of the statute at all.
Inasmuch as the assets subjected to the decree in this case came into the hands of the administrator of Lewis after the death of the administrator and administratrix of Charlton, and before the administration de bonis non was granted, and the administrator de bonis non
brought suit within the ten years after his qualification, the plea of the statute could, under no aspect of the case, avail the appellant, unless he could shew that the limitation began to run in his favour, not from the time of the coming in of the assets, but from the date of the judgment: And such is the proposition contended for; a proposition which seems to me to run counter to all the analogies of the law. It is argued that though noassets came into the hands of the defendant within ten years after the date of the judgment, it was the duty of the plaintiff, in order to keep alive his claim, to sue out a scire facias or to bring an action of debt, within *Page 452 
said period, suggesting that assets had come into the defendant's hands out of which he had a right to demand execution of his judgment. And though upon an issue, made up on the state of the assets, the plaintiff had confessed that no assets had, since the judgment, come into the hands of the defendant, or such issue had been tried and found against him, (as it must have been in accordance with the fact,) he would have been entitled to take a second judgment quandoacciderint; that the first judgment would be merged in the second, and that the limitation would again begin to run from the date of the last mentioned judgment. It is said that as, in the original action, the plaintiff may, notwithstanding he admits there are no assets in hand liable to his demand, take a judgment quando, there is no reason why, in the proceedings upon the scirefacias, or in the action upon the judgmentquando, he may not pursue a like course and take a similar judgment. This reasoning is, I think, founded on a mistaken view of the ends and objects of the two actions. In his original action the plaintiff seeks the accomplishment of two purposes, the judicial ascertainment of the justice of his claim against the decedent, and of his right to have present satisfaction out of the estate of the decedent, in the hands of his representatives. In such action though the administrator shews that there is nothing now in his hands liable to the plaintiff's demand, such defence does, in no way, contravene the right of the plaintiff to prove the original justice and unsatisfied state of his claim against the decedent; nor does it present any reason why the plaintiff should not have satisfaction of his claim out of any assets that may, in future, come into the hands of the representative. Though, therefore, the plaintiff fails in effecting one of the purposes of his suit, there is no reason why he should be denied the accomplishment of the other. The judgment quando acciderint has been *Page 453 
moulded by the Courts to meet the exigencies of the case. The sentence of the Court is pronounced in favour of the debt or demand, but its satisfaction is made dependent on the future coming in of assets out of which to pay it. In the second proceeding, or suit, upon the judgment, the gravamen of the complaint, the gist of the action, is the coming in of assets since the judgment, and the failure of the defendant in applying them to its discharge. The suggestion that assets have come to the hands of the representative since the judgment is no mere form or legal fiction, but involves the pith of the controversy, and presents the point on which the action rests. The judgment quando, from its very form and nature, is an acknowledgment of the most solemn form on the part of the plaintiff, that he is entitled to be satisfied only out of future assets. If no assets havecome to hand since the judgment, the plaintiff has nothing to complain of or on which to found his action. In the case of an ordinary judgment capable of being presently executed, it is true the plaintiff may bring his action of debt upon it as soon as it is rendered. He is entitled to immediate satisfaction, and the defendant is at once in default if he does not pay it. But it is difficult to conceive of the propriety of a suit where the plaintiff cannot truly allege any grievance, and the defendant is in no default. If the plaintiff fails in proving that assets have since come, c. he must, I think, go out of Court: Yet I do not see why a failure in his suit, because of its being prematurely brought, should form any bar to ascire facias or action brought thereafter when assets have actually come to hand. Should the defendant rely on the verdict and judgment in the proceedings on the formerscire facias or action on the judgment, the plaintiff might reply and shew that his defeat was occasioned solely by the failure to shew assets, and that assets have come into the hands of the representative since said last mentioned *Page 454 
proceedings. A case has been cited which shews that where the plaintiff in his scire facias or action on a judgment when assets, shews that assets of a limited amount not sufficient to satisfy his demand have since judgment come to hand, he may take judgment for so much to be presently levied de bonis testatoris, and have judgmentquando for the balance. I do not perceive the weight of the authority as applicable to a case in which the plaintiff wholly fails to prove assets. If the plaintiff proves assets to any extent, he does to that extent maintain the allegation on which his action rests; and he ought to have judgment accordingly; and as there is no propriety in two judgments of the same character for the same thing, provision in the same judgment is made for the balance of his demand out of the future assets. His original judgment is as it were merged in the second; and any future proceedings for the collection of the demand will be founded on said last mentioned judgment. But where he wholly fails in his proof of assets he only shews that he has been premature in his proceedings, and his demand still rests on his former judgment, exactly as it did before; with the exception that in any future action or scire facias the right to shew assets will be confined to the period since the judgment in the unsuccessful proceedings just mentioned. Judgmentsquando acciderint may be rendered against heirs as well as against executors and administrators. In debt against a niece as heir to the uncle, the defendant confessed the bond, but pleaded that nothing in fee simple descended to her besides a reversion of thirty acres, c. after the death of such a one. It was held that the plaintiff might take a special judgment to recover the debt and damages of the aforesaid reversion, when it should fall in. And inFortrey v. Fortrey, 2 Vern. R. 134, it was decided that where a man obtains judgment against an heir who has a reversion in fee descended to him, the judgment is only of *Page 455 
assets quando acciderint; and the creditor cannot by a bill in equity, compel the heir to sell the reversion,but must expect till it falls in. So in Comyn's Digest, vol. 6, p. 326, Pleader 2, E. 4, Replication, it is said, "after riens per descent pleaded, the plaintiff may pray execution of assets cumacciderint; or if riens per descent præter, he may pray execution of assets confessed; or reply that the defendant had assets ultra; and if he replies assetsultra he may waive it and pray judgment of assets confessed cum acciderint." In Wells v.Bowling's heirs, 2 Dana's R. 41, most of the foregoing authorities are cited, and the farther case is put of the title to real estate descending to an heir whilst in the adverse possession of another; and it is said that there is the same reasons in favour of allowing judgmentsquando against heirs as against executors: that the creditor is not presumed to know the state of the assets in the hands of the heir or executor, and he should not be prejudiced by bringing his suit to establish his debt against the decedent, before assets have come to hand.
Take the case of a suit against an heir on the bond of his ancestor and of a judgment thereupon quando; the heir having no estate, in possession, descended, but having a right to lands which at the death of the ancestor were in the adverse possession of another, and for which the heir has instituted, his action. Of lands so situated, the plaintiff could not have execution; but they would be assets when recovered. Pending such adverse possession and controversy, no failure to proceed on his judgment could, I think, prejudice the plaintiff; and I do not perceive any reasons that would bring a judgment against an executor when assets within the operation of the statute that would not apply with equal force to the like judgment just mentioned against the heir.
If I am correct in supposing that no action on a judgmentquando against an executor can be maintained *Page 456 
without alleging and proving assets, it follows that, if the statute embraces such judgments at all, it designs to defeat all recovery upon them after ten years, though no assets may come in the mean time into the hands of the representative; the only means of avoiding the operation of the statute, suggested, being the suing out of a scire facias, or bringing an action and taking a new judgment when assets. But whether correct or not in my views of the plaintiff's right to maintain a suit on such a judgment without proving assets, I am satisfied that the statute only embraces judgments that may be enforced by execution without some new proceeding; and that judgments quando stand as they did at the common law, liable, after assets have come to hand, to those presumptions of satisfaction that attach to judgments ordinarily where there has been great delay in proceeding upon them.
An objection to the jurisdiction of the Court is made in the answer. It is not, however, mentioned in the petition, nor noticed in the arguments of counsel, and may, I suppose, be regarded as abandoned. The circumstances disclosed in the bill and the proofs, in relation to the state of the assets, furnish, I think, proper grounds for the resort to a Court of equity. One of the causes of error assigned is, that the copy of the judgment filed is not properly authenticated. No exception was made to the paper in the Court below, and nothing said of it in the argument here. I have not been able to discover the force of the objection.
I see no error in the decree, and am of opinion to affirm it.
We have to determine in this case whether a judgmentquando acciderint against an executor or administrator, not revived or renewed by scire facias or action of debt brought thereon within ten years next after the date of the judgment, is barred by *Page 457 
the statute of limitations, 1 Rev. Code, ch. 128, § 5, p. 489. In 2 Lomax Ex'ors 455, the affirmative construction of the statute is expressed by the learned author; but the question has never been authoritatively decided by this Court. Braxton v. Wood's adm'r, 4 Gratt. 25, was the case of a judgment recovered by confession, "if a sufficiency of assets of the defendant's testator's estate shall remain after payment of debts of superior dignity;" and was decided by the three Judges then sitting to be barred by the statute. In the opinion which I delivered in that case. I had occasion, for the sake of illustration, and the development of the principles belonging to the subject, to express my views of the statutory bar in regard to judgmentsquando acciderint, and to shew their applicationa fortiori to the judgment we were then considering. In that opinion the President concurred. JudgeDaniel delivered a separate opinion, in which he stated his own reasons for concurring in the decision, but was silent in relation to the application of the statute to a judgment quando acciderint.
The question, therefore, in regard to a judgment quandoacciderint, is still an open one, and the views of it presented by my opinion in Braxton v. Wood's adm'r,
have, in the argument of the present case, been earnestly and ably controverted by the appellee's counsel; but upon grounds, as I conceive, unavoidably narrow and technical. In order that those grounds may be distinctly understood, and to avoid unnecessary repetition, I must here refer to the opinion as reported, to which, after a careful reconsideration, I still adhere.
It is contended, in the first place, on the part of the appellee, that judgments quando acciderint are not at all embraced by the statute. If this be so, then it follows that though assets to many times the amount of such a judgment come to the hands of the executor or administrator, in a few days thereafter, yet the plaintiff *Page 458 
may lie by an indefinite number of years, and then proceed to enforce his demand. It is difficult to conceive any consideration of policy which could have induced the legislature to permit such a result, in the enactment of a law, intended to quiet not only individuals but dead men's estates against antiquated judgments. It is not denied that other judgments de bonis testatoris fall within the plain meaning of the statute, and it cannot be denied that a judgment quando acciderint, in the case supposed, would fall within the same mischief; and it is remarkable if such an exception was contemplated that it was not indicated by express words.
It is sufficiently obvious that the construction contended for is merely literal, and unwarranted even by that mode of treating the subject. The words of the statute are, "judgments in any Court of record within this Commonwealth, where execution hath not issued, may be revived byscire facias or an action of debt brought thereon, within ten years after the date of such judgment, and not after." And the argument is founded upon the word "revived," which it is urged indicates a judgment which has become dead by the failure to sue out execution within the year, and not one upon which no execution could have issued at any time from its rendition. But the word "revived" does not warrant the interpolation of the word "dead," which has never been applied to a judgment, and could not be applied with more propriety to one upon which execution might, than to one upon which it could not, have issued. A judgment on which execution has not issued within the year, is not dead but only sleepeth, and may be awakened not only by scire facias or debt, but by suing out execution without either, if the delay has been occasioned by the acts of the defendant, or for his accommodation and at his request. 8 Bac. Abr. 600, 601, 602; UnitedStates v. Harford, 19 John. 173; and in no case is suing out execution *Page 459 
after the year without scire facias void, but only voidable. Id.
The word revived is used in the statute in reference not to the character of the judgment, but to that of the specified remedies, to wit, a scire facias
or an action of debt, and it has the same meaning in regard to both, that is to say, the renewal of the judgment; in the former remedy by an award of execution, and in the latter by the recovery of a new judgment. And both remedies may be resorted to as well before as after the year. 8 Bac. Abr. 603; 1 Chit. Plead. 355: and either may be preferable to suing out execution, where the plaintiff wishes a judicial decision, in a regular course of pleading and trial at law, upon some question touching the validity or discharge of the judgment. We accordingly find that the period of limitation begins, not from one year after the judgment, but from its date. The statute, it will be seen, embraces the subject of limitations after judgment, by two distinct clauses of the same sentence; the first of which relates to judgments where execution, from whatever cause, has never issued, and the last to further proceedings by execution, where execution has once issued without being returned.
When we come to the spirit and policy of the statute, there is if possible still less difficulty. It is an act of limitation against judgments, and like other acts of limitation a statute of repose. It bars the judgment by barring the only actions at law by which it can be enforced, the action of debt and the writ of scirefacias which is a judicial writ, and in that sense an action, open to all the pleadings, evidence and modes of trial applicable to the action of debt. The necessity for a period of limitation is stronger than in most other cases; for the judgment being matter of record perpetuates itself, and cannot be erased even by the concurring act of the parties; while the evidence of its *Page 460 
discharge, or release, or opposing equities, rests for the most part in perishable documents, or the fleeting testimony of witnesses.
I cannot doubt therefore that judgments quandoacciderint fall within the plain terms and meaning of the statute, as well as all other judgments upon which no execution has ever issued; and that if there be any difficulty in the construction of the statute, it is as to the period of time from which the limitation begins to run, whether from the date of the judgment or the time when assets come to the hands of the executor or administrator: and here it is that we must advert to the nature of the judgment.
A judgment de bonis testatoris is compounded of two elements, the recovery against the estate represented by the defendant, and his responsibility for the assets. The first is irrespective of the condition or amount of the assets; the last is dependent upon the assets which have come to his hands to be administered. If the demand in the action be just, he cannot resist the recovery of it against the estate because he has no assets to satisfy it; and on the other hand, he has a right to relieve himself from personal liability, direct or indirect, by shewing that he has fully administered. And if he does so, or the fact be admitted by the plaintiff, how is judgment to be rendered, so as to establish the debt against the estate, and at the same time his full administration of the assets up to the time of his plea? The difficulty arises from his uniting in his own person his individual with his representative interests, so that a judgment against the estate must be rendered through him; and that difficulty is solved by the plaintiff's taking a recovery of his debt against the defendant in his representative character, to be levied of the goods and chattels which were of the decedent at the time of his death, and which since the plea pleaded have come, or which shall thereafter come, to *Page 461 
his hands to he administered. This is a subsisting judgment against the estate, and may be enforced not only against the same executor or administrator, but against any subsequent personal representative of the estate.
The plea of fully administered therefore, although both in form and substance a plea in bar, is one of a peculiar nature. It can be pleaded only by an executor or administrator, and presents no answer to the justice of the plaintiff's demand; but only serves to shew that the defendant is not accountable therefor, having no assets of the estate in his hands wherewith to pay it. It is no bar to the recovery of the debt against the estate, but to the present accountability of the then representative. The plaintiff is therefore not bound to take issue upon it, but may admit it to be true, and take his judgment notwithstanding, with a direction that it shall be paid out of assets that may thereafter come to the defendant's hands. If this were not so, and the plaintiff prevented from establishing the justice of his demand by a judgment against the estate, the absurd consequence would follow of absolving the estate therefrom forever, because of its present inability to make payment.
The leading authority upon this point is MaryShipley's Case, 8 Co. 134 a, which was debt on a bond against the executors of the obligor: the defendants pleaded fully administered, and so nothing in their hands: replication that they had assets: the jury found assets in part; and judgment was given for the whole debt, damages and costs; which judgment was affirmed in the Exchequer chamber; for upon the bar which is nothing in their hands, the plaintiff might have prayed judgment immediately; for thereby the debt is confessed, but that she cannot have execution until the defendants have goods of the deceased. *Page 462 
In Dorchester v. Webb, Cro. Car. 372, the propriety of the judgment in Mary Shipley's Case was not denied, but the soundness of the opinion upon which it was founded disputed. The report states it was contended that when an executor pleads fully administered the plaintiff may take judgment presently, and expect when the defendant hath assets, for he remains always executor and may have goods of the testator; and for that purpose was cited Mary Shipley's Case, that if an executor pleads fully administered the plaintiff may take judgment presently, and expect when he has assets in his hands. On the other hand, the law as stated in MaryShipley's Case was denied, and the difference contended to be that when it is found that the defendant has some assets, though of little value, so as he hath not fully administered, the plaintiff shall have judgment of the entire debt, but he shall not have execution but of as much as is found, and shall not be barred of the residue, and if more assets come afterwards he may have scirefacias to have execution thereof; but if it be found that he hath fully administered, or if it be so pleaded and confessed, then judgment shall be against the plaintiff. And so the Court held the law to be.
But in Noel, c. v. Nelson, 2 Wms. Saunders, pt. 2d, p. 214, 226, the principle of MaryShipley's Case was affirmed. The action was debt against executors upon a bond of their testator: the defendants pleaded plene administravit, on which plea the plaintiff prayed his judgment of the debt to be of assets quando acciderint according to the rule inMary Shipley's Case; and the Court gave judgment accordingly; on which judgment the executors brought a writ of error, and insisted on the matter in law, that such judgment as this ought not to be given, notwithstanding the opinion in Mary Shipley's Case; and of such opinion was *Page 463 
Twysden, Justice, strongly, who denied the said opinion inMary Shipley's Case to be law, and relied much on the opinion of Jones, Bushby and Croke, inDorchester v. Webb, where MaryShipley's Case is denied by them to be law: but Kelynge, Chief Justice, Rainsford and Morton, Justices, held the judgment to be good; and afterwards a precedent being produced where such a judgment was entered according to the opinion in Mary Shipley's Case, Twysden agreed that the judgment should be affirmed. And the reporter gives the pleadings and judgment in the case, p. 216, which judgment is as follows:
"And the said W inasmuch as the said M and T by their said plea do not deny but that the said writing now here into Court brought is the deed of the said N the testator, nor that the said debt in the said writing specified is a true and just debt, yet unpaid and not satisfied, or otherwise discharged; and inasmuch as the said W cannot deny but that the said M and T have not, nor on the day of the suing out of the original writ of him, the said W, nor ever since hitherto, had any goods or chattels which were of the said N the testator, at the time of his death, in their hands to be administered, prays judgment of his debt aforesaid by him above demanded, to be levied of the goods and chattels which were of the said N at the time of his death, and which shall hereafter come to the hands of the said M and T to be administered: therefore it is considered that the said W recover against the said M and T his debt aforesaid, to be levied of the goods and chattels of the said N, the testator, at the time of his death, and which shall hereafter come to the hands of the said M and T to be administered." And the like form of judgment will be found in 2 Lilley's Ent's 505, and in 2 Lomax Ex'ors 446.
The principle of Mary Shipley's Case, and ofNoel v. Nelson, has never since the latter case been questioned, *Page 464 
and it is equally applicable whether the plaintiff confesses the plea of fully administered, or takes issue upon it and it is found against him, in the whole or in part. All the cases agree that where the jury find assets in part, the plaintiff shall have judgment for the residue also, to be leviedquando. And in Dorchester v. Webb,
the plaintiff's confession of the plea was very properly considered as standing upon the same footing as a verdict thereupon for the defendant, though the Court erred in the conclusion that there ought in either case to be judgment against the plaintiff. The defence is pleaded in bar of the action, and ought to have the same result whether found or admitted to be true. No reason can be assigned for a distinction, except that in the case of a verdict the defendant has been subjected to costs at the trial, which is no reason for defeating a just debt, but only for allowing such costs to the defendant. And a judgment for the plaintiffquando, after verdict for the defendant upon the plea of fully administered may very properly be regarded as in the nature of a judgment non obstante veredicto.
The case of Timberlake v. Benson's adm'r,
2 Virg. Cas. 348, serves to shew that according to the Virginia practice the plaintiff has judgment quandoacciderint, as well where there is a verdict for the defendant upon the plea of fully administered, as where the plaintiff confesses the plea to be true. The General court there held that where an administrator pleads the single plea of fully administered on which the plaintiff takes issue, and the issue is found for the defendant, the verdict is conclusive proof that the defendant has not present assets; but as the plea is an acknowledgment that the intestate is indebted to the plaintiff, and the verdict is not conclusive that the defendant may not have future assets, the judgment ought to be rendered for the plaintiff for his debt and costs, to be levied of the goods of the intestate quando acciderint; but as the defendant *Page 465 
has supported his issue, and to maintain the only plea which he pleaded has been subjected to costs, he ought to have a judgment for the general costs of his defence against the plaintiff. And that where the defendant pleads nonassumpsit and fully administered, and issue is taken on both, and both tried, and the first issue is found for the plaintiff, and the second for the defendant, the judgment ought to be for the plaintiff, as in the former case; because as he is obliged to come into Court to establish a debt due to his intestate, he ought to recover not only his debt but his costs also out of the future assets; but as the defendant has supported his second plea, he ought to have a judgment for the costs which he has expended in supporting that issue, that is for his separate costs of that issue.
In Burnes v. Burton, 1 A. K. Marshall, Kent'y R. 369, it was held that on a plea of fully administered, if the plaintiff takes issue upon the plea of fully administered, and it is found against him, he must pay costs, but yet have judgment quando acciderint.
In Miller v. Towles, 4 J. J. Marshall, Kent'y R. 255, in an action of covenant, on a verdict for the defendant on the plea of fully administered, it was held to be error to render judgment in bar of the action; as the issue acknowledged the justice of the plaintiff's demand, it should have been in his favour for the damages, to be levied quando acciderint.
 Wilson v. Hurst, Peters' Cir. Ct. R. 441, was a scire facias against executors on a judgment against their testator; the defendants pleaded payment and no assets: there was a verdict for the plaintiff on the plea of payment, and for the defendant on the plea of fully administered; and the plaintiff prayed judgment quandoacciderint, which was directed.
The question whether assets or not is the same after a judgment quando that it was before, except that the *Page 466 
range of it is more limited in point of time. It is open to the like pleadings, evidence, verdict and judgment. See the proceedings in a scire facias. 2 Wms. Saunders, pt. 2, p. 217-222, upon the judgment quandoacciderint in Noel, c. v. Nelson. The defendant may plead plene administravit, 2 Tidd. Prac. 1046, and shew the due administration of the assets which have come to his hands since the former judgment and plea; which question involves not merely the enquiry whether goods and chattels which belonged to the decedent did come to the hands of the executor, but also his administration of them according to law. It is the balance only due from him after allowance of the proper credits which constitutes the assets in his hands. And the defendant might plead and prove judgments recovered against him on debts of higher dignity, and paid or outstanding, to a greater amount.
It is argued that the quando of such a judgment has the same effect as the stay of a judgment by a writ of error, or an injunction, or a cessat executio;
during which the statute cannot operate. But the reason is that during the writ of error, or injunction, orcessat, an action of debt or scire facias
cannot be brought upon the judgment. This it has been shewn is not so in regard to a judgment quando acciderint,
upon which scire facias or debt will lie immediately; and that if there be still no assets in the hands of the executor, the judgment may be revived or renewed by the like judgment. And there is direct authority to the point where assets are found as to part only, 2 Wms. Ex'ors 1231, and there is equal reason where none are in hand.
In the cases put of a writ of error or injunction, the judgment is superseded, and has no effect during the pendency of the proceeding. In the case of a cessatexecutio, the judgment is in effect superseded, for the suspension is absolute and unconditional, and renders it substantially a judgment in futuro. But a judgment *Page 467 quando acciderint, so far as the estate is concerned, is immediate, absolute and unconditional, and even as regards the executor the direction as to the levy is not so much a condition as a consequence of his having already accounted for the previous assets. And we must not suffer ourselves to be misled to the supposition that the judgment is conditional, by the appellation given to it with more brevity than accuracy.
Indeed, the whole argument of the appellee's counsel upon this branch of the case arises from his treating the judgment quando acciderint as conditional; and hence he has urged that the statute of limitations does not begin to run until assets have come to the hands of the executor. By this must of course be meant assets properly applicable to the discharge of the judgment; for a plea that no assets at all have come to his hands would not present the bar of the statute, it being at most a denial, instead of an admission, of a once existing cause of action. How then would a plea of the bar of the statute according to his view of it be framed. It would have to set forth the assets received by the executor since the judgment, his credits against the same for the payment of debts entitled to priority, the date at which a balance against him ought to have been struck, and that more than ten years have elapsed since that time; thus presenting a plain breach of trust on the part of the executor. This would be an anomalous plea of a statute of limitations, and a strange departure from the one in question, which provides that no action or scirefacias shall lie upon a judgment but within ten years from its date; a statute moreover designed primarily, in actions against executors, for the protection of the estate, and operating only incidentally and consequentially for the protection of the executor.
A plea of the statute in general terms, that the cause of the scire facias or action did not accrue within ten years would be idle, if no assets at all have come to the *Page 468 
hands of the executor since the judgment; and unavailing, if in point of fact assets have so come to his hands; for the statute could not run during the period of administration of the assets, but only at its close, when a balance struck would shew assets, still remaining in the hands of the executor, from which time only, if at all, could the statute avail anything. But it could not avail anything in any state of the assets; for an executor always continues executor and trustee for the creditors, and cannot plead the statute in exoneration of his personal responsibility for the assets; and the exoneration of his testator's estate by limitation of the statute has reference to the date of the judgment, and not to the accrual or administration of the assets.
It will be seen that the statute is permissive as well as negative. It provides that judgments may be revived or renewed by scire facias or debt brought within ten years next after the date of the judgment, and not after; and upon the point we are now considering it must be taken that judgments quando acciderint fall within the meaning of the law. Now the statute ought to have a fair and liberal interpretation, so as to allow the revival or renewal contemplated, by the modes prescribed, within the period limited, and to prevent it afterwards; and this cannot be done otherwise than by permitting the plaintiff to shew assets in hand if he can, and if he should fail, to place his case in a condition to shew it thereafter. And we must not be deterred from a fair and wholesome construction of the statute by supposed formal difficulties.
It is urged that a scire facias or declaration would be wrong without the statement that since the judgment quando assets have come to the hands of the defendant; and that the statement may be denied, and if so must be proved. But the suggestion in the scirefacias is not merely of assets but of sufficient assets; and it cannot be denied that if assets to the amount of *Page 469 
one dollar or even one cent have come to his hands, the revival may be accomplished: then why not by the plaintiff's admission there are none, with a prayer of judgmentquando? Surely a distinction which is to defeat forever a debt acknowledged to be justly due, cannot be founded on such a nicety. And such must be the inevitable result; for the plea would be in bar of the scirefacias or action, and not in abatement. The question whether an executor has assets remaining in his hands must in most cases be one of mere probability. Every action, however, against an executor or administrator, is upon that assumption; and it would be very remarkable if the revival or renewal of a judgment quando should be defeated by a mistake or failure of proof of the very nature which led to the judgment itself.
The reason why a scire facias or a declaration upon a judgment quando must state that assets have come to the hands of the defendant, besides the formal one of conformity with the description of the judgment, is that by the omission the plaintiff encounters an estoppel. The judgment itself is conclusive as to the defendant's full administration up to that time, and he has a right to plead fully administered since. It must therefore appear that the plaintiff is not going behind the judgment in search of assets.
The case cited from Buller's N. P. 169, of Taylor
v. Holman, was this: "In debt on a judgment against the defendants as executors, suggesting adevastavit; in the original action the defendants had pleaded plene administravit, and the plaintiff had taken judgment of future assets quandoacciderint. Lord Mansfield would not allow the plaintiff to give any evidence of assets come to the hands of the defendants before the judgment, for the plaintiff has admitted that the defendants fully administered to that time: And there being no evidence of any assets come to his hands since, the *Page 470 
plaintiff was nonsuited. Taylor v. Holman,
at Guildhall Sittings after T. 1764."
The case is not in point, it not being debt to revive the judgment quando, but debt for adevastavit, by which the plaintiff abandoned the pursuit of the estate, and sought to subject the executors personally. It was moreover a nonsuit, which must have been with the plaintiff's acquiescence, the Court having no power, even in England, to direct a nonsuit after appearance, without his consent. Watkins v.Towers, 2 T. R. 275.
Another case cited, of Mara v. Quin,
6 T. R. 1, was this: The plaintiff sued out "a scirefacias upon a judgment in an action of debt against the defendant as executrix of Quin. After stating the proceedings in the former action, that the defendant there pleaded other judgments recovered and pleneadministravit, on which the plaintiff prayed, and the Court adjudged, that his debt should be levied of the goods and chattels of the testator which should thereafter come to the hands of the defendant to be administered, after satisfaction of the other judgments, c., it proceeded to state that divers goods, c. of the testator, sufficient to pay as well the other judgments as the plaintiff's, had come to and were in the hands of the defendant to be administered, c., (without saying that those goods had come to the defendant's hands since his judgment.) and prayed execution against the defendant to be levied of those goods, according to the form and effect of his said recovery. c. The defendant pleaded (inter alia) that after the plaintiff's judgment no goods, c. of the testator had come to the defendant's hands to be administered, c. To this the plaintiff replied that divers goods, c. had come to the defendant's hands, c., (without adding `since the former judgment, c.') and the defendant demurred."
In that case, it will thus be seen, that the plaintiff demurred to the defendant's plea, that since the judgment *Page 471 
no assets had come to his hands to be administered; which demurrer was in the face of the estoppel; and in the argument the plaintiff placed the case upon the ground that he had a right to go behind the judgment to shew prior assets. The plaintiff was unavoidably defeated; and the question is not at all presented, whether he might not have confessed the plea, and taken judgment when assets.
The case of Lidderdale v. Robinson'sadm'r, 2 Brock. R. 160, has no application. The question whether the judgment was barred by the statute was not and could not be made, for it was not pleaded, and it seems probable the plaintiff, in consequence of his residence beyond sea, came within one of the exceptions of the statute.
It seems to me, therefore, clear that whatever may be the state of the assets, or although there may be none, a creditor is entitled to recover judgment against the estate, and keep the same in force by revival or renewal thereof: and that this may always be accomplished by aquando acciderint, the defence of fully administered being personal to the existing executor or administrator, and limited to the time of pleading it, and no bar in effect to the action itself, whether that be founded upon the original demand, or upon the judgment.
On the other hand, I cannot doubt if a creditor sleeps upon his judgment quando acciderint for ten years from its date, instead of taking the proper steps to enforce, revive or renew it, the same is barred by the statute of limitations, as completely as if the judgment were a general one, to be levied of the goods of the testator or intestate, without restriction. If this were otherwise, then as it has been shewn that a plaintiff may at his pleasure confess a plea of fully administered, or no assets, and take judgment quando acciderint, it would *Page 472 
be always in his power, by his own act, to place his demand beyond the reach of the statute.
If it should be thought hard that assets accruing after the ten years cannot be reached for satisfaction of the judgment quando, the answer is, that the same result follows other judgments de bonistestatoris, without regard to the fact whether there be assets in hand within the ten years or not, and also all judgments against persons individually, whether the defendant be solvent or insolvent, within or during that period. It is in vain to say that the want of assets furnishes a presumption against the satisfaction of the judgment. The Legislature has not deemed it sufficient, and in fact it might often prove fallacious, for the evidence of assets, as well as of release or payment, may be lost, and payment may have been made by the executor in anticipation of future assets, or by some person, or out of some fund, collaterally bound for the debt. It is a wise policy, and cures a defect of the common law, to close the door after such laches and lapse of time, against all such enquiries; a policy of which the present case is an apt illustration. The judgment in question was recovered in the year 1802, by the executors of the original creditor, on a debt contracted in 1798, against the executor of the original debtor, who died in the year 1800. The surviving executor plaintiff in the judgment, died about the year 1810, and the executor defendant therein, not until the year 1827. And this suit to enforce the judgment was brought in the year 1840, against the executor of the defendant in the judgment and the sheriff administrator de bonis non of the original debtor, by the administrator de bonis non of the original creditor, he having qualified as such in the year 1831. After such lapse of time, deaths of parties, and shifting representations, what security is there for a correct adjudication upon the merits of a case; and *Page 473 
is any thing more manifest than the wisdom of a complete statutory bar?
In the construction of a statute, where a case falls within the words and within the mischief, upon what principle are we to search for an intent of the Legislature beyond and in conflict with both? Here the application of the statute of limitations to the judgment in question is resisted, in the first place, upon the ground that such a judgment is not within the meaning of the Legislature, and in the next place, upon the ground that if it be, the limitation does not take effect until ten years after assets have come to the hands of the executor. The first proposition imports, that though assets to any amount have come to the hands of the executor within a week from the time of the judgment, the plaintiff may lie by for half a century, and then proceed by scire facias or debt to revive the judgment, though such assets have been entirely administered. The second proposition imports, that within ten years after assets to the amount of a single cent have come to the hands of the executor, though twenty years after the date of the judgment, the plaintiff may still proceed to revive his judgment. And the reasoning which results in these propositions is derived from the state of the law existing before the enactment of the statute, the evils of which it was the purpose of the Legislature to redress.
I can understand very well why the statute is not applicable to a judgment where the plaintiff cannot revive by scire facias or debt; but I cannot understand why it should not apply, merely because the plaintiff cannot sue out execution. The cases relied on, are all cases which occurred in reference to the capacity to sue out execution, after the expiration of a year from the judgment, and no execution or continuance on the roll within that time. And in that aspect they have no bearing upon the question, whether debt or scire facias *Page 474 
will lie either before or after the year expires. Most of them it is true, in another aspect, serve to repel the statute of limitations, but it is only because of the incapacity to maintain debt or scire facias; as where occasioned by injunction or writ of error, orcessat executio. The case of execution stayed by indulgence or agreement, is no replication to the bar of the statute, for it neither suspends the capacity to maintain debt or scire facias, nor falls within any of the savings of the proviso. Indeed, a replication of an express promise to pay the debt is bad. Day, ex'or of Yates
v. Pickett, 4 Munf. 104.
The true question, therefore, is reduced to this, whether a judgment quando acciderint may be revived byscire facias or debt, without proof that assets have come to the hands of the executor; or more properly to this, whether although such a judgment may be so revived if assets to one cent's value have come to his hands, yet if that cent be wanting, and the verdict of the jury so finds, there must be judgment against the plaintiff thereupon, and his debt barred forever. That such must be the effect of such a verdict and judgment results from the rules of pleading, and is expressed by the Judges inBrickhead v. The Archbishop of York,
1 Hobart 197.
In regard to judgments quando acciderint against heirs bound by the obligations of their ancestors, I do not perceive that they throw any light upon the present case, and when the question arises, it will be time enough to consider whether, in the construction of the statute, they do not equally fall within the terms and the mischief, or whether there is a diversity arising out of the nature of the subject, to wit, realty, or out of the relation of ancestor and heir, making the obligation the personal debt of the latter. Davy v. Pepys,
2 Plowd. 440. But as to the case cited of a reversion or remainder expectant upon an outstanding estate for life, *Page 475 
pleaded specially as the only assets by descent, and immediate judgment to be levied of the same when the life estate falls in, it seems to me clear that it differs widely in principle and effect from a general judgmentquando, whether against heir or executor; inasmuch as it is a specific appropriation, and impounding, as it were, of the particular subject for the satisfaction of the judgment, and the lien by matter of record is perfect, as much so as that of a mortgage, and of course there can be no room for the application of the statute.
My opinion is, that the judgment sought to be enforced in this suit, is barred by the statute of limitations; and therefore, without considering the other questions discussed in the argument, I think the decree of the Circuit Court ought to be reversed and the bill dismissed.
ALLEN, J. concurred with Judge Daniel.
 DECREE AFFIRMED. *Page 476